UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RONALD C. BAKUS, as Administrator of the                                      PLAINTIFFS
Estate of Edwin P. Scott, M.D., and as Trustee
of the Edwin P. Scott Revocable Trust, ET AL.

v.                                                          CIVIL ACTION NO. 3:14-CV-00981-CRS


RONALD C. BAKUS, II, ET AL.                                                   DEFENDANTS

<u>**MEMORANDUM OPINION**</u>

  This matter is before the Court on two motions.  First, Defendant John Koskinen,

Commissioner of the Internal Revenue Service ("IRS"), filed a motion to dismiss for lack of

subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (DN 19).[1]

Second, Plaintiffs move for a hearing on the pending motion to dismiss (DN 29).  For the

following reasons, the Commissioner's motion to dismiss (DN 19) will be granted, and

Plaintiffs' motion for a hearing (DN 29) will be denied.[2]

## I.  BACKGROUND

  Over the course of his life, Edwin P. Scott, M.D., amassed significant personal wealth

through saving and investment.  (Pet., DN 1-1, ¶ 9.)  On June 19, 2007, the Jefferson County

District Court found Scott to be fully disabled and incapable of independently managing his

personal and financial affairs.  (Pet., DN 1-1, ¶ 10.)  Scott lost his wife and only daughter

approximately ten years before being adjudicated disabled.  (Pet., DN 1-1, ¶ 9.)  Therefore, the

court appointed Scott's son-in-law, Plaintiff Ronald C. Bakus, as his limited guardian and Stock

---

[1] In addition, the Commissioner moved to dismiss for failure to state a claim upon which relief can be granted under
Federal Rule of Civil Procedure 12(b)(6).  But the Court will decide the motion based on the threshold issue of
jurisdiction, rather than consider the merits of Plaintiffs' claims.
[2] The Court will deny Plaintiffs' motion for a hearing (DN 29).  The parties' briefs adequately state their positions
and arguments on the issues presented by the Commissioner's motion to dismiss.  The Court does not need the
assistance of a hearing to resolve this jurisdictional dispute.

Yards Bank & Trust ("Stock Yards") as his conservator.  (Pet., DN 1-1, ¶ 10.)  Three months later, the court replaced Stock Yards with Commonwealth Bank & Trust Co. ("Commonwealth").  (Pet., DN 1-1, ¶ 11.)

In early 2012, Bakus approached Commonwealth to discuss the use of an "asset protection and estate plan" to avoid estate taxes upon Scott's death.  (Pet., DN 1-1, ¶ 12.)  On August 29, 2012, however, the court removed Commonwealth from its position as conservator and appointed Bakus as the full guardian for Scott.  (Pet., DN 1-1, ¶ 14.)  Bakus then developed a plan to provide for Scott's needs during his lifetime, protect his assets, and achieve substantial savings on estate taxes.  (Pet., DN 1-1, ¶ 18.)  As part of that plan, Bakus formed two entities to hold and preserve a large portion of Scott's assets—Plaintiff Cornell Holdings, LLC, ("Cornell") and the Edwin P. Scott Revocable Trust ("Scott Trust").  (Pet., DN 1-1, ¶ 18.)  Bakus manages Cornell alone and acts as trustee for the Scott Trust.  (Pet., DN 1-1, at 1–2, ¶ 3.)

On December 6, 2012, Bakus moved for permission to implement the plan in Jefferson County District Court.  (Pet., DN 1-1, ¶ 19.)  But the court denied Bakus's motion, stating that it doubted his power to make the necessary asset transfers under Kentucky law.  (Pet., DN 1-1, ¶ 19.)  Thereafter, Bakus petitioned for and received emergency relief from the Jefferson County Circuit Court, allowing him to implement the plan before the scheduled expiration of certain tax provisions.  (Pet., DN 1-1, ¶ 19.)  Prior to January 1, 2013, Bakus transferred Scott's assets according to plan.  (Pet., DN 1-1, ¶ 19.)

On September 12, 2013, Scott died of natural causes without a valid will or testamentary device.  (Pet., DN 1-1, ¶ 20.)  Bakus serves as the administrator of Scott's intestate estate.  (Pet., DN 1-1, ¶ 21.)  Scott's only known heirs are Bakus's two sons, Defendants Ronald C. Bakus, II, and Keegan Bakus.  (Pet., DN 1-1, ¶ 24.)

-2-

Plaintiffs Bakus and Cornell commenced this action under the Kentucky Declaratory Judgment Act, KRS 418.040 *et seq.*, in Jefferson County Circuit Court.  (Pet., DN 1-1, ¶ 1.) Plaintiffs seek a declaratory judgment that Kentucky law authorized the implementation of the asset protection and estate plan during Scott's life and the continued execution of the plan after his death.  (Pet., DN 1-1, Ct. I.)  Alternatively, Plaintiffs demand a declaratory judgment that Kentucky law conflicts with the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, insofar as state law may be interpreted to deny them the authority to engage in asset protection and estate planning on behalf of Scott.  (Pet., DN 1-1, Ct. II.)  Plaintiffs joined as defendants Scott's two known heirs and any unknown heirs, along with Koskinen in his official capacity as Commissioner of the IRS.  (Pet., DN 1-1, ¶¶ 4–7.)  According to Plaintiffs, "[t]he IRS may have an interest in the subject matter of this case by virtue of its assessment and collection of any allegedly-owed estate tax" and "should be required to come forward and assert any position it may have."  (Pet., DN 1-1, ¶ 25.)

The Commissioner removed the case to this Court under the federal officer removal statute, 28 U.S.C. § 1442.[3]  (Notice of Removal, DN 1, ¶ 1.)  He now moves to dismiss for lack of subject matter jurisdiction (DN 19).  The Commissioner contends that the sovereign immunity of the United States bars the claims brought against him in his official capacity.

---

[3] The Commissioner also cited 28 U.S.C. § 1346 as a basis for removal.  (Notice of Removal, DN 1, ¶ 1.)  Section 1346 grants original jurisdiction to the federal district courts over

> [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

28 U.S.C. § 1346(a)(1).  It is dubious whether § 1346 provides for removal jurisdiction here.  Plaintiffs do not contest the wrongful assessment or collection of any tax or penalty in the past.  Rather, this declaratory action is structured to preemptively resolve any future tax dispute over Scott's estate.

## II.     STANDARD

The federal district courts are "'courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute.'"  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)). "'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L. Ed. 264 (1868)).  For a court to adjudicate the merits of a claim without jurisdiction "is, by very definition, for a court to act ultra vires." *Id.* at 101–02.

When a defendant moves to dismiss for lack of subject matter jurisdiction, "'the plaintiff has the burden of proving jurisdiction in order to survive the motion.'"  *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).  The Court accepts the complaint's allegations as true in deciding a Rule 12(b)(1) motion that merely questions the sufficiency of the pleading.  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  But, when the motion challenges the existence of a jurisdictional fact, "no presumption of truthfulness applies to the allegations."  *Id.*  The Court then may examine evidence beyond the pleadings to ascertain whether the jurisdictional fact exists.  *Id.*

## III.     DISCUSSION

"'It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'"  *Munaco v. United States*, 522 F.3d 651,

652 (6th Cir. 2008) (quoting *United States v. Mitchell*, 463 U.S. 206, 212, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983)).  The sovereign immunity of the United States extends to federal agencies and federal officers in their official capacities.[4]  *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013).  A suit against a federal officer implicates sovereign immunity where the relief sought would "compel or require action from the sovereign, or 'expend itself on the public treasury or domain, or interfere with the public administration.'"  *TransAmerica Assurance Corp. v. Settlement Capital Corp.*, 489 F.3d 256, 262 (6th Cir. 2007) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949); *Land v. Dollar*, 330 U.S. 731, 738, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947)).

At the outset, the sovereign immunity of the United States bars this suit against the Commissioner in his official capacity.  Plaintiffs seek a declaratory judgment on the legality of their actions in managing Scott's assets, and they allege that the federal government may hold an interest in those assets through its assessment and collection of the estate tax.  (Pet., DN 1-1, ¶ 25.)  Plaintiffs joined the Commissioner as a defendant to demand that he assert any such interest claimed by the United States.  (Pet., DN 1-1, ¶ 25.)  The relief sought here certainly compels action from the sovereign.  The proposed relief would force the United States—acting through its officer—to declare its revenue interest and be bound upon the entry of judgment. This aspect of the declaratory action also interferes with public administration.  Rather than allow the federal government to assess and collect taxes in the manner it deems appropriate,

---

[4] In responding to the Rule 12(b)(1) motion, Plaintiffs attempt to move for leave to file an amended petition. Plaintiffs would replace the Commissioner with the United States as a named defendant.  Beyond the improper presentation of this request in a responsive brief, the proposed amendments would be entirely futile.  *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) ("Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss.").  Sovereign immunity deprives the Court of jurisdiction whether the defense is asserted by the Commissioner in his official capacity or the United States itself.  *Muniz-Muniz*, 741 F.3d at 671.

Plaintiffs attempt to the drag the United States before a tribunal for an immediate tax determination in a legal proceeding of their design.

The question remaining is whether the Commissioner somehow waived the sovereign immunity of the United States. Plaintiffs argue that the Commissioner waived the defense of sovereign immunity by invoking this Court's removal jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442. To support that argument, Plaintiffs rely on *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002). In *Lapides*, the Supreme Court held that a state waived its sovereign immunity by voluntarily removing a lawsuit to federal court. *Id.* at 616. But that seemingly broad holding is limited to the narrow "context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." *Id.* at 617; *see Agrawal v. Montemagno*, 574 F. App'x 570, 573 (6th Cir. 2014); *Dantz v. Am. Apple Grp.*, 123 F. App'x 702, 706–07 (6th Cir. 2005). The *Lapides* Court, moreover, recognized that it "has permitted *the United States* to enter into a case voluntarily without giving up immunity or to assert immunity despite a previous effort to waive." 535 U.S. at 623. "[A]n effort by a sovereign (*i.e.*, the United States) to seek the protection of its own courts (*i.e.*, the federal courts)" does not raise the same fairness concerns as a state's effort to regain its statutorily waived immunity by removing a state law claim to federal court. *Id.*

The defense of sovereign immunity survived the Commissioner's removal, because "'[t]he United States cannot be sued at all without the consent of Congress.'" *Muniz-Muniz*, 741 F.3d at 671 (quoting *Block v. North Dakota*, 461 U.S. 273, 287, 103 S. Ct. 1811, 75 L. Ed. 2d 840 (1983)). No statutory basis for consent has been present here, and the acts of a federal officer cannot waive the sovereign immunity of the United States:

> It is a corollary to immunity from suit on the part of the United States . . . that this immunity cannot be waived by officials. If the contrary were true, it would subject the government to suit in any court in the discretion of its responsible officers. This is not permissible.

*United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 513, 60 S. Ct. 653, 84 L. Ed. 894 (1940);

*accord United States v. Shaw*, 309 U.S. 495, 500–01, 60 S. Ct. 659, 84 L. Ed. 888 (1940)

("[W]ithout specific statutory consent, no suit may be brought against the United States," and

"[n]o officer by his action can confer jurisdiction."). The Commissioner is without any power

whatever to impair the sovereign immunity of the United States. He certainly could not effect a

constructive waiver of that immunity through his removal of this action.

The Court also recognizes that finding a waiver of sovereign immunity where the federal

officer removal statute is invoked would frustrate the purpose of that removal provision. The

federal officer removal statute permits a defendant to remove to federal district court a state-

court action brought against

> [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). Federal officer removal must be predicated on the assertion of a

"colorable federal defense." *Mesa v. California*, 489 U.S. 121, 129, 109 S. Ct. 959, 103 L. Ed.

2d 99 (1989). By raising a colorable federal defense, the officer identifies the federal law under

which the action arises for purposes of Article III. *Id.* at 136. "The removal statute itself merely

serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal

even if a federal defense were alleged." *Id.* The primary reason for the statute is to allow a

federal officer to litigate his federal defense in a federal forum. *Bennett v. MIS Corp.*, 607 F.3d

1076, 1084–85 (6th Cir. 2010).

-7-

The Commissioner, of course, asserted the sovereign immunity of the United States as a colorable federal defense to this suit brought against him in his official capacity. But Plaintiffs contend that the Commissioner was stripped of immunity by the act of removal. This argument is wholly inconsistent with the purpose of the federal officer removal statute. Rather than offer a hospitable forum for the litigation of federal defenses, the statute would destroy the principal defense of federal officers sued in their official capacities. Therefore, the Court concludes that Plaintiffs' claims against the Commissioner in his official capacity must be dismissed as sovereign immunity prevents the exercise of jurisdiction.

When the federal party is eliminated from a suit after removal under § 1442, the Court does not lose its supplemental jurisdiction over the state law claims against the non-federal parties. *District of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132–33 (D.C.C. 1985); *Spencer v. New Orleans Levee Bd.*, 737 F.2d 435, 438 (5th Cir. 1984). The Court may either adjudicate the underlying state law claims or remand the action to state court. *Merit Sys. Prot. Bd.*, 762 F.2d at 133; *Spencer*, 737 F.2d at 438. Here, the Court declines to exercise continuing supplemental jurisdiction over the non-federal elements of this action.[5] Those remaining claims involve questions of Kentucky law best decided by the state court. *See Merit Sys. Prot. Bd.*, 762 F.2d 133. Furthermore, remand to state court will not sacrifice "judicial economy or fairness to the parties." *Id.* The Court conducted no proceedings in this case other than adjudication of

---

[5] As explained above, the Court remains doubtful that 28 U.S.C. § 1346 grants jurisdiction over this declaratory action against the Commissioner. Nevertheless, the dismissal of the Commissioner eliminates the possibility that original jurisdiction continues to exist in this case. Section 1346 is inapplicable in the absence of a federal party. *See id.* § 1346(a).

No party invoked federal question jurisdiction under 28 U.S.C. § 1331 based on the claims alleging a state law conflict with the ADA. Though those claims mention the ADA, they present no federal question. In a declaratory action, whether a federal question exists is determined by reference to a hypothetical non-declaratory suit (*i.e.*, a suit for coercive relief) between the same parties. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012). If a federal question would appear in the complaint of the hypothetical suit, federal jurisdiction exists over the declaratory action. *Id.* Here, Plaintiffs would only raise the potential conflict with the ADA as a federal defense to a coercive action in which Scott's heirs allege violations of state law regarding the authority of a full guardian. Thus, a federal question does not appear on the face of the well-pleaded complaint.

the federal defense.  *See id.*  Accordingly, this action will be remanded to state court pursuant to 28 U.S.C. § 1447(c).  *Spencer*, 737 F.2d at 438.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant the Commissioner's motion to dismiss for lack of subject matter jurisdiction (DN 19), and Plaintiffs' claims against the Commissioner will be dismissed without prejudice.  The Court will also deny Plaintiffs' motion for a hearing (DN 29).  Plaintiffs' remaining claims will be remanded to Jefferson County Circuit Court.  A separate order will be entered this date in accordance with this Memorandum Opinion.

August 21, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**